IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURI A. JOHNSON, | ) | CASE NO. 1:14 CV 572 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.  Nature of the case and proceedings**

Before me[1] is an action by Lauri A. Johnson under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Johnson, who was 49 years old at the time of the administrative hearing,[11] lives with her husband and two children.[12] She completed 11th grade, and does not have a GED.[13] She has past relevant work as a nurse assistant and as a cleaner.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Johnson had the following severe impairments: obesity, degenerative disc disease of the lumbar spine with radiculopathy and spondylolisthesis of L4 on L5; major depressive disorder; dysthymic disorder; anxiety disorder; bipolar disorder; and adjustment disorder.[15]

---

[6] ECF # 13.

[7] ECF # 17 (Johnson's brief); ECF # 20 (Commissioner's brief); ECF # 22 (Johnson's reply brief).

[8] ECF # 17-2 (Johnson's charts); ECF # 21 (Commissioner's charts).

[9] ECF # 17-1 (Johnson's fact sheet).

[10] ECF # 24.

[11] Transcript ("Tr.") at 20, 22.

[12] *Id.* at 15. Elsewhere in the record, Johnson testified that her daughter was 29 and her son was 8 at the time of the hearing. *Id.* at 53-54.

[13] *Id.* at 20, 239.

[14] *Id.* at 20, 198.

[15] *Id.* at 13.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Johnson's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work as follows: The claimant can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. The claimant can stand or walk up to two hours and sit for up to six hours in an eight-hour workday, with normal breaks. The claimant can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. The claimant can frequently balance, occasionally stoop, and never kneel, crouch, or crawl. The claimant must avoid all exposure to hazardous machinery and unprotected heights. The claimant is limited to frequent use of foot controls with the right let [sic]. The claimant is precluded from commercial driving. The claimant is limited to tasks that are non-complex. She is precluded from tasks that involve high production quotas and strict time requirements. The claimant is limited to tasks that involve superficial interaction with co-workers and the general public.[16]

Given that RFC, the ALJ found Johnson unable to perform her past relevant work.[17]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Johnson could perform.[18] The ALJ, therefore, found Johnson not under a disability.[19]

---

[16] *Id.* at 17.

[17] *Id.* at 20.

[18] *Id.* at 21.

[19] *Id.* at 22.

**C.     Issues on judicial review and decision**

Johnson asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Johnson presents the following issues for judicial review:

- The RFC limited Johnson to six hours of sitting. The opinion of the treating physician, Dr. Butt, limited Johnson to occasional sitting (no more than one-third of an eight-hour workday). Although the ALJ gave Dr. Butt's opinion considerable weight, he gave no reasons for failing to limit sitting consistent with that opinion. Does substantial evidence support the RFC providing for six hours of sitting?

- Dr. Ahn, a treating psychiatrist, opined that Johnson had marked limitations in all work-related functions. The ALJ gave that opinion "less weight" and stated reasons for that weight. Did the ALJ give "good reasons" for the weight assigned consistent with the regulations?

- The ALJ gave the opinion of Dr. Tishler, the state agency reviewing psychologist, significant weight but did not incorporate in the RFC Dr. Tishler's limitation to one-two step tasks in a stable environment. Does substantial evidence support the exclusion of these limitations from the RFC?

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed, with the matter remanded for further proceedings.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

---

[23] 20 C.F.R. § 404.1527(d)(2).

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

---

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate

---

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

-8-

standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status

---

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

[45] *Id.*

[46] *Id.*

notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

---

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

-10-

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt

---

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

---

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.    Application of standards**

---

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

As noted, in this case Johnson challenges the ALJ's handling of three opinions from qualified medical sources: two from treating sources, and one opinion from a reviewing source. In addition, Johnson contends that the ALJ erred in dealing with the opinion of a treating physical therapist, which is not a recognized medical source. For the reasons that follow, I will conclude that the ALJ's failure to properly analyze the opinion of Shahid Butt, M.D., Johnson's treating physician, requires that the decision be reversed and the matter remanded.

Before examining how the ALJ dealt with Dr. Butt's opinion, it is necessary to situate this opinion within the context of Johnson's allegation of disability, the ALJ's prior findings regarding her mental and physical impairments, and the RFC as determined in this case.

The ALJ found that Johnson had both physical and mental severe impairments.[71] He adopted an RFC that addressed the physical impairments with exertional limitations to lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently, standing or walking up to two hours, and sitting for six hours, all in an eight-hour workday with normal breaks.[72] As for mental limitations, the ALJ restricted Johnson to limited tasks that are non-complex without high production quotas and strict time requirements and with only superficial interaction with coworkers and the general public.[73]

---

[71] Tr. at 13.

[72] *Id.* at 17.

[73] *Id.*

The ALJ incorporated the RFC finding with these limitations into a hypothetical posed to a VE at the hearing.[74] The VE responded by identifying a significant number of jobs locally, state-wide, and nationally that Johnson could perform.[75]

The ALJ then posed a second hypothetical reducing exertional limitations for lifting and carrying to sedentary.[76] In response, the VE identified two jobs that Johnson could perform, with a total of 1,200 existing locally.[77]

Johnson's treating physician, Dr. Butt, gave multiple opinions that Johnson could only tolerate occasional sitting (up to 33%) in an eight-hour workday.[78] The ALJ assigned these opinions considerable weight.[79] In doing so he stated that "these opinions with regard to claimant's physical limitations ... are consistent with the objective findings and treatment history."[80] The ALJ also noted that the state agency reviewing physician had opined that Johnson could sit, stand, and walk for at least two hours per workday.[81] The ALJ limited

---

[74] *Id.* at 76.

[75] *Id.* at 77-78.

[76] *Id.* at 78.

[77] *Id.* at 78-79.

[78] *Id.* at 627-29, 632, and 633.

[79] *Id.* at 19.

[80] *Id.*

[81] *Id.* at 18.

standing and walking to two hours per workday but found that Johnson could sit up to six hours per workday.[82]

Here, as Johnson notes, Dr. Butt treated Johnson for two years, pursuing various medications and therapies in an attempt to deal with the consequences of her spinal degeneration that was documented in imaging studies.[83] It was in that context that Dr. Butt, who is plainly a treating source,[84] consistently and frequently opined, *inter alia*, that Johnson was limited to standing or sitting no more than "occasionally," or less than 33 percent of the work day.[85]

That said, the ALJ did not deal individually with Dr. Butt's opinion, nor explicitly identify him as a treating source, whose opinions, if otherwise supported, are entitled to controlling weight. Instead, Dr. Butt and his opinions were grouped together with other physicians who made reports to the Ohio Bureau of Worker's Compensation because Johnson incurred a workplace injury.[86] Thus, the ALJ here begins the analysis of Dr. Butt's opinion without an acknowledgment of his status as a treating source, and thus without any recognition of the two-step analytical pathway set out by *Gayheart*, as well as by taking the

---

[82] *Id.* at 19.

[83] *See*, ECF # 22 at 2-3 (citing transcript).

[84] The record contains 9 reports by Dr. Butt issued between April 12, 2010, and October 20, 2010. Tr. at 627-35. In addition, the record also shows that Dr. Butt treated Johnson from November, 2011, through February, 2012. Tr. at 561-64.

[85] Tr. at 627, 628, 629, 632, 633.

[86] *Id*. at 19.

shortcut of tossing the opinions of multiple sources into an analytic stew, so as to pronounce a single verdict on the resulting combination.[87]

Although I have not located any comparable cases where the Commissioner has taken such an approach, it seems apparent that this format runs a serious risk of virtually precluding an ALJ from even basic compliance with the well-established rules for analyzing opinions of treating sources. In particular, it's difficult to see how an ALJ can speak with sufficient particularity about identified deficiencies in a given opinion if that opinion itself is not handled on an individual basis. By necessity, any comment about an aggregation of opinions must be a generalization that is asserted to be true as to each, separate opinion. As such, it would be difficult for any generalization as to a group of opinions to be a "good reason,"

---

[87] I also note that while Dr. Butt is plainly a treating source, as apparently is Paul Miotto, M.D., who treated Johnson multiple time in the period from April, 2009, to January, 2010 (Tr. at 595, 598, 600-01, 603, 605, 607-08, 610, 612, 614, 617, 619), it is by no means clear that this is true for Dean Erickson, M.D., M.P.H, who is the third member of the group whose opinions were treated collectively by the ALJ. Tr. at 19. Dr. Erickson conducted a one-time examination of Johnson on behalf of the state workers' compensation bureau. Tr. at 375-80. As such, Dr. Erickson would be a one-time consulting examiner, and not a treating physician in the same category as Drs. Butt and Miotto. The ALJ's decision here to combine all three opinions for a single, broad-brush analysis thus creates the additional inherent problem on judicial review of trying to determine if the ALJ used the analytic standard for treating sources in considering Dr. Erickson's opinion, or used the standard for examining sources when considering the opinions of Drs. Butt and Miotto. Plainly, the ALJ improperly grouped together opinions from different kinds of sources that are to be evaluated by different standards, and then gave the reviewing court no way to meaningfully consider the results.

subject to meaningful judicial review, for a decision to diminish the presumptively controlling weight given to the individual opinion of a treating source.[88]

With that noted, I turn to the explanation offered by the ALJ for the weight given to the collective opinions of these treating and examining sources. The ALJ first found that the collective opinions "consistently noted at least a sedentary level of exertion" and also indicated that Johnson was "capable of sitting, walking and standing on an occasional *or frequent* basis."[89] He then concluded that these opinions were entitled to "considerable weight" as to Johnson's physical limitations.[90] The ALJ ultimately determined in the RFC that Johnson could stand or walk for up to two hours in an eight-hour day, and sit for up to six hours.[91]

As is indicated from the italicized portion of the opinion cited above, the ALJ here took the far lesser restriction on sitting, standing, and walking that appears only in the examining source opinion,[92] and then adopted that opinion as somehow also reflecting the

---

[88] Indeed, for the same reason, the case authority is clear as to the fatal flaw of dismissing a treating source opinion as simply being "incompatible" with some unstated, unspecified portion of the record. Rather, the ALJ must make an effort to identify the "specific discrepancies" at issue, and so provide a basis for meaningful judicial review as to whether that identified discrepancy constitutes a "good reason" for giving the opinion of the treating source "the short end of the stick."

[89] Tr. at 19 (emphasis added).

[90] *Id.*

[91] *Id.* at 17.

[92] *Id.* at 623. By comparison to the opinion of Dr. Butt, a treating source, as to Johnson's limited ability to sit, stand or walk, Dr. Erickson, the one-time examiner,

judgments of the two treating sources, whose actual opinions were far more restrictive. Whether intentional or inadvertent, this slight-of-hand clearly shows the difficulty for a reviewing court in assessing the quality of the reason given for rejecting a component opinion that was only analyzed collectively. In effect, the ALJ did not claim to reject or diminish the treating source opinion at all, but attempted to make it invisible by grouping it in with a less restrictive opinion by a less weighty source, and then elevating the lesser opinion to the status of being representative of the whole, and then assigning that opinion considerable weight.

For the reasons set out in some detail above, I find that the ALJ's treatment of the medical sources here is not capable of meaningful judicial review. Moreover, to the extent that the individual strands in the rope can be untangled and examined, I further find that the ALJ has not stated a good reason why the more restrictive functional limitation of the treating source was given "the short end of the stick" so as to prefer the less restrictive limitation offered by a one-time examining source. Clearly, on remand, the better course would be not to lump the opinions of examining and treating sources together for purposes of making generalized comments about an allegedly consistent point of view, but to analyze each opinion under the rubric proper to that source and then to provide reasons capable of meaningful judicial review for any decision regarding appropriate weight.

---

opined that Johnson could "continuously" sit, stand, and walk. In the ALJ's formulation, Dr. Erickson's less restrictive opinion is consistent with Dr. Butt's more restrictive opinion and with the "objective findings and treatment history."

-19-

Johnson has raised other issues here, but because the ALJ's failure to follow the treating source/good reasons requirement is sufficient to remand the matter for further proceedings, it is not necessary to address or adjudicate those questions.

## Conclusion

For the reasons stated above, substantial evidence does not support the finding of the Commissioner that Johnson had no disability. Thus, the denial of Johnson's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 9, 2015                                 s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge